OPINION OF THE COURT
Edward M. O’Gorman, J.
The City of Newburgh has commenced an action against the County of Orange to recover the costs of transporting prisoners from the City Court, in Newburgh to the Orange County Jail in the Village of Goshen, 25 miles distant.
The complaint seeks to recover the cost of such transportation during a six-year period commencing March 1, 1973 and extending through April 30, 1979, amounting to approximately $63,000. The complaint also seeks a judgment declaring that the County of Orange has the legal duty to transport prisoners between the Newburgh City Court and the Orange County Jail for such court proceedings as may require such service.
The city contends that during the above period all prisoners who have been transported between the City Court and the county jail as directed by the Judges of the City Court have been transported by members of the Newburgh Police Department.
The city has now moved for summary judgment and the county has cross-moved for summary judgment to the effect that the City of Newburgh is not entitled to be reim *989 bursed for the cost of transporting prisoners in vehicles owned by the city and operated by members of the city’s own police department.
These motions present a simple issue of substantial practical importance as to which branch of our multiple governmental subdivisions must bear the costs of transporting prisoners when directed by our courts as they discharge their respective responsibilities in the administration of criminal justice.
For reasons not apparent to the court, there is no clear statutory direction governing this question and very few cases have arisen to shed light on the issue.
The City of Newburgh relies upon an opinion of the Attorney-General dated November 16, 1977 (1977 Atty Gen [Inf Opns] 280), which construes section 500-c of the Correction Law and CPL 500.10 (subd 4) as imposing upon the county the responsibility for payment of the costs of transporting prisoners from a local court to a county jail. The conclusion is based upon the argument that the Sheriff is responsible for the cost of prisoners who are “in his custody.” The opinion points out that pursuant to section 500-c of the Correction Law, the Sheriff must receive every person lawfully committed to his custody and that the county is thereafter responsible for the expense connected therewith.
The opinion then proceeds to state that pursuant to CPL 500.10 (subd 4), commitment occurs when the court orders the defendant to be confined in custody. The opinion goes on to state (p 280) “This custody begins at the time of commitment even though the person has not been physically handed over, or is not at the jail. This interpretation is also expressed in Lake Shore Hospital Inc. v. Fries, 86 Misc 2d 169.”
However, the case cited does not support the statement with respect to the time that custody begins. In Lake Shore Hosp. v Fries (86 Misc 2d 169), the defendant Fries was shot in the leg by his victim during a robbery. His confederates took him to the hospital where he was treated. The hospital sued the county for the cost of his treatment. The court held that the county was not responsible for the ex *990 pense because the complaint in the action did not allege a lawful commitment of Fries to the custody of the Sheriff. The case says nothing about what constitutes custody by the Sheriff or when it begins.
The case of People ex rel. Coates v Martin (8 AD2d 688), also referred to in the opinion, stands for no more than the proposition (as stated in Lake Shore Hosp. v Fries, supra, at p 171), “[I]t is not for the sheriff or his deputies to question a commitment issued by a magistrate with power to do so”.
CPL 500.10 (subd 4) describes a commitment as occurring when the court orders that a prisoner be confined to the custody of the Sheriff. This section does not, however, define the term “custody”, nor deal with the time when the Sheriff actually takes custody of a prisoner.
It is clear that while the commitment is a mandate of the court to the Sheriff to take the prisoner into custody, the prisoner is not in the custody of the Sheriff until such time as the Sheriff actually takes custody of him, and in this latter connection the term “custody” has been defined by the Legislature as follows: “ ‘Custody’ means restraint by a public servant pursuant to an authorized arrest or an order of a court.” (Penal Law, § 205.00, subd 2.)
Apart from the legislative declaration, it is clear that the opinion of the Attorney-General also flies in the face of the plain dictionary definition, wherein the word “custody” is defined as follows: “As applied to a person, ‘custody’ means physical control of the person, sometimes by his imprisonment” (see Ballentine’s Law Dictionary [3d ed], p 300).
Although the Legislature has set varying limits on the jurisdiction of our New York courts and has limited the area in which such jurisdiction may be exercised by precise geographical boundaries, nonetheless our courts constitute an integrated court system.
The enforcement of the criminal law in the courts of this State involves the interplay of many separate judicial elements during pretrial proceedings, trial proceedings, post-conviction proceedings, all of which may result in the final commitment of a criminal defendant to a detention facility maintained by the State or one of its subdivisions.
*991 All of this process in the past has involved expense to the governmental subdivision in which each particular court was located. These expenses included construction and maintenance of court facilities, salaries of necessary personnel, and a variety of incidental expenses necessarily incurred in carrying out the particular responsibility assigned to the court by the Legislature.
In some instances, the Legislature has made specific provision for the payment of particular expenses by a particular branch of the government. Where it has not done so, the expenses have been borne by the unit of government responsible for the particular court incurring the expenses. (See Correction Law, §§ 601, 601-a, 602.)
In the present case, the issue involves the liability for costs of transporting prisoners between the City Court of the City of Newburgh and the Orange County Jail. The resolution of this question will depend on determining first where the Legislature has placed the responsibility to issue the particular mandate which required the transportation, what officers were designated by the Legislature to execute the mandate and what provision, if any, the Legislature may have made for shifting the expense from the City Court, which issued the mandate, to the county.
The following statutory directions bear on the particular issue:
Section 2005 of the Uniform City Court Act provides as follows: “The judges of the court shall have the power and jurisdiction to send processes and other mandates in any matter of which they have jurisdiction into any part of the county * * * for service or execution as provided by the criminal procedure law”.
Section 105 (subd [b]) of the Uniform City Court Act provides: “Enforcement officers; police officers. The enforcement officers of the court shall perform the same duties as are performed by sheriffs in courts of record and shall have, within their territorial jurisdiction and subject to any limitations imposed by this act * * * such power to serve and execute the processes and mandates of the court as a sheriff has with regard to the processes and mandates of the supreme court. They shall also, have, within their *992 territorial jurisdiction, all of the powers in criminal matters of a constable of a town in the state of New York. It shall also be the duty of the police officers of the city to execute all criminal processes and mandates of the court. Neither an enforcement officer nor a police officer shall receive any fee or compensation for the service or execution of any criminal process or mandate issued out of the court.”
Section 650 of the County Law provides: “The sheriff shall perform the duties prescribed by law as an officer of the court and conservator of the peace within the county. He shall perform such additional and related duties as may be prescribed by law and directed by the board of supervisors.”
The following sections of the Criminal Procedure Law also bear on the issue herein:
CPL 510.40 — Application for bail. “1. An application for recognizance or bail must be determined by a securing order which either * * * (c) Denies the application and commits the principal to, or retains him in, the custody of the sheriff.”
CPL 510.50 — Enforcement of securing order. “When the attendance of a principal confined in the custody of the sheriff is required * * * the court may compel such attendance by directing the sheriff to produce him at such time and place.”
CPL 530.60 — Order of bail; revocation thereof. “If he is not [entitled to bail], the court may either issue such an order or commit the defendant to the custody of the sheriff.”
CPL 550.10 (subd 2, par [a]) — Securing attendance of defendants. “If the defendant is confined in the custody of the sheriff, the court may direct the sheriff to produce him”.
The foregoing sections make clear that the City Court has the power to commit criminal defendants to the custody of the Sheriff and that the Sheriff has the responsibility to carry out the mandate of the City Court in those cases in which the Criminal Procedure Law authorizes the commitment of prisoners to his custody and that court so directs.
It is also clear from the above-quoted sections of the Uniform City Court Act that the members of the Police Department of the City of Newburgh have the responsibility of *993 carrying out those mandates of the City Court which are directed to them to execute, and to do this without charge.
It would seem, therefore, that under these circumstances both the city police and the Sheriff have the duty to carry out the lawful mandates of the City Court which are directed to them. (In this connection, see Matter of Delaney [Potsen], 75 AD2d 642.)
If the Police Department of the City of Newburgh undertook to assume the burden of transporting prisoners from the City Court and delivering them into the custody of the Sheriff in Goshen, section 105 of the Uniform City Court Act, by its terms, would prevent payment for such transportation.
This case does not present the issue of the consequence of a refusal by the Sheriff to transport a prisoner at the direction of the City Court of Newburgh. The complaint in this action does not allege that the prisoners whose transportation was the subject of the complaint were transported by the city police as a consequence of the Sheriff’s refusal to perform his duty. The first cause of action, therefore, which seeks recovery from the county for the cost of the transportation must be dismissed without prejudice to the commencement of an action to enforce such rights as the city may have based on circumstances other than those presented in this case. In this connection, the parties should consider the effect on the issues presented in this case of the application of section 39 of the Judiciary Law which provides for the assumption of certain court-related expenses by the State of New York, where those expenses have been properly budgeted (see Judiciary Law, § 39, subd 3, par [a]).
With respect to the second cause of action which seeks a declaratory judgment herein, it is the judgment of the court that the Sheriff has the duty to transport prisoners from the City Court to the county jail upon the issuance of a lawful mandate by the City Court committing such prisoners to his custody in those cases where such commitment is authorized by statute.